Good morning, your honors. May it please the court. This court in an earlier argument asked counsel, where does it fit? I think that is a particularly appropriate question in this case. For no case that we've been able to find has ever applied Guideline Section 2C1.1, which is a guideline covering corruption by public officials, to those who merely impersonate government agents. In fact, every reported case dealing with this issue hold that impersonators are not subject to the guidelines set forth in Section 2C1.1. Now, the government, in response to our argument, seizes on the term otherwise, and it submits that otherwise must include, per force, those who are not public officials. But what was this fellow's job? I'm sorry? What employment did this individual have? He was actually a Safeway employee, your honor. My understanding from the pre-Senate report was that he worked at Safeway as a clerk, and merely because he impersonated an immigration agent during the course of this conspiracy was he subject, at least in the district court's evaluation, to Section 2C1.1. Now, the guideline itself applies to either a public official who acts under color of law, and every case dealing with this precise fact pattern, from Avis to the other ones, held that 2C1 does not apply to that particular scenario, or it applies to someone who bribes a public official. Where does it say that? It appears to say that in the commentary to 2C1.1. It says specific offense characteristics. If the offense involved more than one bribe or extortion, increase by two levels. Right. And I'm specifically dealing with the background section, your honor. Which one? The background section under 2C1.1 is found in the comments section, and in particular, I'm referring to page 133 of the guidelines background. This section applies to a person who offers or gives a bribe for a corrupt purpose, such as inducing a public official to participate in a fraud, or to a public official who solicits or accepts such a bribe. So it seems to suggest that a public official has to be involved on one side of the equation or the other. Either a public official accepts a bribe or a public official actually commits the offense and is the defendant itself. But in no reported case has 2C1.1 ever been applied to a person like Mr. Salorza, who was merely a private individual. Let me ask you, isn't there a presumption or a requirement that the district court, when you determine the base offense level, you go to the index and you apply what the index says? Yes. And isn't this what happened? Isn't that what happened here? It is what happened here. The index says this is the 2C1.1. I can't remember all these numbers, but I think that's the one we're talking about. That's correct. Is the guideline that applies to this particular offense? It does. It says that 2C1.1 applies to convictions under 18 U.S.C. 872, which is the statute of conviction before the court. Right. And doesn't our case law say that it says that the district court judge has to use that guideline? I'm not aware that the case law says that it's mandatory, Your Honor. In fact, I think the only case which comes close to even talking about that is the Alfaro case, and that case we believe is distinguishable because in that case the district court actually did apply the applicable guideline and then looked at another guideline to make an upward departure, which this Court held was improper. In this particular case, we have what's an imprecise fit.  But, you know, he tried to act, he represented himself through his letter as though he were a government official. As though. That's correct. But that is not enough to be a public official, number one, at least the Abbott case. It's not limited just to public officials by its own terms. By its own terms, it's not limited to public officials, but by the commentary and with the background, it either applies to a public official or someone involved with a public official. And we believe that that argument is furthered by the fact that the guidelines themselves say do not apply abuse of public trust to this particular guideline because, you know, it would appear to be incorporated. A private individual cannot abuse the public trust. So he would be subject to an enhancement as a private citizen for standing in a relationship to his cousins, which is familial but is not a position of trust such that the abuse of trust enhancement would normally apply. And because of the fact that that particular enhancement is built into the guidelines, we believe that is a further reason that 2C1.1 would be an inappropriate fit here. I do believe that the one other way to look at it, Your Honors, is to take a look at 18 U.S.C. 912. 912 does not cover extortion, but it does cover those who impersonate public officials. And we believe that the Abbott's case out of the Seventh Circuit is precisely on point because it looked at this offense conduct and said this is not the type of conduct that would fit within 2C1.1. He does not act under colored official right because he is a private citizen. He is not a public official. And for those reasons, we believe that the appropriate course for the court to have taken was to look at the background and say I can't reconcile this language in the statute with the language in the guidelines. And I don't think it's an appropriate fit. And I think under those, you know, under that situation, the court would be permitted to look elsewhere or decide that this is not the way that the guidelines ought to be applied. And I think at the very least what you have here. No, I mean, I just assumed that, well, maybe I shouldn't say assumed, but I understood what would happen is that the offense, you'd look at the offense. Once you determine which guideline applied to the particular statute of conviction, then you look at the offense conduct to determine what adjustments you would make under the. Correct. Under the guideline. And so here he's not a public official. Correct. If it said otherwise. So he gets, was it 10? It would be 10 instead of 12. 12 instead of 14. 12 instead of 14. Correct. But that assumes that he is within the ambit of the otherwise definition. And I have to say that the otherwise definition isn't supplied by the guidelines either. So the court is kind of left with the commentary and the background, the titling, the basic generic composition of the guidelines, which applies to public officials or those who bribe them. But the guidelines are not defined otherwise. So what's the rule to the district court judges about applying these particular offense, base offense guidelines and determining which one applies? What are we telling them? Well, I think. I mean, here the district court judge looked to the index. Correct. Or the probation officer did in the peace sentence report. Applied the guideline. Right. But I don't think the court. So what do we say? This is not what you do? I think, yeah, I think under certain circumstances you say if you cannot reconcile the offense conduct and the charge of conviction with the way the guidelines are set out, you're going to have to do something else. And especially if there's precedent, which we brought to the court's attention. I specifically brought the Abbas case, even though it's a Seventh Circuit case. The Seventh Circuit case, right? Correct. To the court's attention because the factual scenario was dead on and the court held that the cross reference should have been to 2B3.3. I realize that. Do you want to address the other guideline, the vulnerable victim 2.3? The 3A1.1 comment 2 specifically uses the following terms. Unusually vulnerable due to age, physical condition, mental defect, things of that nature, or particularly susceptible to crime. And we believe that that terminology in conjunction with the way that this court has interpreted vulnerable victims, such as the Castellanos case, prescribes the analysis that's appropriate here. You're dealing here with victims who are members of my client's family. However, the fact that they were illegal immigrants as a category does not make them especially vulnerable. The type of ---- But they had the problems with the service, and they are very vulnerable and felt themselves to be so. Well, the fact that they might have felt themselves to be so I don't think is beginning in the analysis, Judge Fletcher. In this particular case, they did have contact with ICE. However, ICE at the very beginning said, you cooperate with us, no further action will be taken. And although I can't swear to this, my understanding, in a way, at least from looking at the probation report, paragraph 9 in particular, is they obtained legal permanent resident status. I am not aware of any information that that status ever changed. In fact, if ICE took no further action, I'm not sure that that status did change. Yeah, but they knew that their whole ---- the way in which they obtained permanent status was under questionable circumstances. That's true, Your Honor, but that's another thing. They admitted. I mean, they told the investigators. They did admit that. But I think that's another thing that distinguishes this particular case is that because they were participants in a fraudulent activity, I don't really think that they are on the same plane as vulnerable victims generally. I mean, I think the Court should pause a little before it would equate somebody that actually participates in a fraud, gets a green light from ICE, and then under the circumstances of this case felt so confident that this ---- another fraud was being perpetrated on them, they didn't even fall for it, called ICE without hesitation and got them involved, are not the type of victims that are vulnerable as defined by case law. I'd like to reserve a couple of minutes. Thank you very much. Yes. May it please the Court. Kevin Barry on behalf of the United States. The district court correctly calculated the defendant's guidelines range. It applied the sole guideline for ---- from the statutory index for the defendant's extortion conviction. And it also found that the defendant preyed on his immigrant cousins due to their known vulnerabilities. And the defendant's sentence must be affirmed. Now, turning to the application of the guidelines range, the very first thing that the court ---- that a sentencing court has to do is determine the applicable guideline. What guideline do I apply to the offense of conviction? In fact, this court has indicated that's the most important step of the sentencing process. And that is purely mechanical. It's a rote exercise. It literally is akin to opening up a book, turning to the index, and finding a page. And the only guideline provided for 18 U.S.C. 872 is 2C1.1. That's precisely what the district court did in this case. It turned to 2C1.1, found the provision for people who are not public officials, and then applied that base offense level. And then it applied the enhancements flowing on top of that. And as the guidelines themselves indicate, and as the court pointed out, 2C1.1 does apply to non-officials. The base offense level is 14 if you're a public official, and it's 12 if you are otherwise. As a matter of fact, the guidelines were amended in 2004 specifically to make that distinction. So he started with 12. Isn't that correct? That's correct. And another aspect in which 2C1.1 is applicable to the defendant and his conduct is not only does the statutory commentary and the statutory provisions indicate that 871, excuse me, 18 U.S.C. 872 is one of the offenses for this guideline, but further, 18 U.S.C. 371, and specifically conspiracy to defraud by interference with governmental functions, there is no requirement in 18 U.S.C. 371 that the defendant be a public official. So there are multiple areas in which the non-public officials can be sentenced under this guideline. Now, Mr. Matthews pointed out that no case has ever applied this. Well, frankly, it is a rare offense. I mean, there's no published case involving both allegations or convictions under 912, which is impersonation, and 872, which is extortion by an impersonator. But Congress has been concerned about impersonation by public officials for a very long time. In fact, the first version of this, of the 872 statute, dates back to 1909. And impersonation, extortion by Federal officials and those pretending to be Federal officials was criminalized even back then. As a matter of fact, in 1951, Congress was concerned that the statute didn't highlight the culpability of public officials enough, and they amended the punctuation to indicate that not only private persons, imposters, but also public officials would be, their conduct would be called under that statute. So Congress has been concerned about imposters for a very long time. They have codified a statute designed to punish that behavior, and the commission, following Congress's lead, gave us a guideline to apply for those convictions, and it is 2C1.1. If the Court has no questions on that aspect, I can turn to the vulnerable victim enhancement. The district court made many findings regarding vulnerable victims. It found that the defendants, excuse me, the victims were not only illegal immigrants, but they were illegal immigrants, as the Court pointed out, who had lied to ICE on their green card applications. They had obtained legal permanent resident status through fraud, and ICE knew about that. And the notion that someone who had been on ICE's radar would all of a sudden go back to ICE and say, hey, look at me, I'm here, even though nothing happened to them before, the fact that they would go back was remarkable. And the Court even said, you know, I was frankly shocked that ICE went, that the eschatels, the victims, went to ICE. So they had, they have very particular characteristics. Again, illegal immigrants who lied on their green card applications and who had been interviewed by ICE about that. But there's also a completely independent basis to find that these were, these victims were vulnerable. And that's because they had previously been defrauded. And the guidelines indicate that victims of prior crimes can also be a vulnerable victim on that basis. And the Court found that the victims had been defrauded by the immigration fixer who prepared their paperwork, and that the defendant knew that. And on those two bases, each one of them is sufficient, but on those two bases, the Court found that the victims were vulnerable and applied the enhancement. And if the Court has no questions, I will submit and ask you to affirm. Do I have any questions? Oh, sure. Brief reply, Your Honor. One, and I'm just going to touch on the guidelines, 2C1.1, for a moment. I think there's a tension here. And if that tension creates an ambiguity, and I certainly think there's one created in this case, there's been a law in this circuit since at least 1993 that the rule of lenity applies to the guidelines as well as statutory construction and that doubts ought to be resolved in favor of the defendant. With respect to the vulnerable victim, I will reiterate what Mr. Berry just touched on. The district court said that they had been previous victims of a fraud. That is partially correct. They were also participants in a fraud. And I don't think that puts them in quite the same category as those cases in which the Court has looked at this. Well, doesn't that make them even more nervous? I don't think so, Your Honor. If they were nervous, I don't think they would have contacted ICE within two days of detecting this fraud. And if the Court will look back at the briefing, Ramona Esquitale, I believe, who was one of the Esquitales, took a look at that letter and said, there is no way that this came from an immigration official. They got together. They called ICE within two days of receiving that first letter. And the phone calls started to come in. ICE was able to conduct this investigation and make the sting. So I don't think that this particular factual record would support the conclusion that you have vulnerable victims that were worthy of a two-level enhancement. I can't remember. I read the sentencing transcript here a while ago. But did – was there a request that the Court under 3553A sort of give a lesser sentence? It did give a lesser sentence. It was five months below the guidelines, I believe, Judge Paez. But it was for a number of different reasons. The Court rejected my argument as a 2C1.1. It also found that the vulnerable victim enhancement applied. And if that's the case, I think a remand is an order, whether she granted 3553A. So I understand. You know, you make an argument. But I thought the district court, when I read it, she sort of looked at everything and – She did. She granted a – she imposed a sentence that was five months below the 41 month low end of the range. Thank you very much. Thank you, counsel. We appreciate your arguments. And the matter is submitted now.
judges: Hug, Fletcher, Paez